*Orphans' Court, Dauphin County, December 17th, 1855.*

IN THE MATTER OF RITTERSPACH'S ESTATE.

A widow, being administratrix of the estate of her husband, did not settle it up, but after carrying on his business for some time in her own name, and using his personal property, sold it all, including her own claim for three hundred dollars out of his estate, for a certain sum, and with an agreement that her vendee should pay all her husband's debts. *Held,* That the estate of the administratrix was responsible for all of her decedent's debts, which her vendee failed to pay.

*Held, further,* That not having collected three hundred dollars out of her husband's estate, but having merely sold her right to it, her estate must be charged with that amount.

BY THE COURT.—Mahala Ritterspach was administratrix of her husband Charles, and before settling an account on his estate, died. Administration was granted on her estate, and the two accounts are now submitted for final confirmation. It appears that Mahala did not proceed according to law in the settlement of her husband's estate, but after his decease continued to occupy the tavern-house, of which he held a lease, and to use the household

furniture until July 1st, 1852, when she entered into an article of agreement, in writing, to sell the effects, real as well as personal; to Michael N. Stoner, for the consideration of $400, and the further consideration that the said Michael should pay all the debts of every nature and kind due or owing by her deceased husband. The article also shows that Mrs. Ritterspach had been carrying on business on her own account after her husband's death, and with the effects referred to, transferred certain accounts due to her.

This whole proceeding was illegal, as it was her duty to have sold all of the personal property, including the lease of the tavern, at vendue, to have collected the debts due to her husband, and paid so far as she had assets. It is quite probable that entering into the article was as favorable an arrangement for those interested in the estate, whether as heirs or creditors, as a public sale, perhaps more so; and although unauthorized, it does not lie either in her or Stoner's mouth to aver the illegality. The heirs and creditors have a right to enforce the article, and hold Mrs. Ritterspach's estate responsible for its performance. If Mr. Stoner failed to pay the debts according to contract, it was the duty of Mrs. Ritterspach to sue on the article, and collect the amount. Failing to do so, she is guilty of a *devastavit* of her husband's goods, and the debts must be charged to her. The account must be corrected by charging the administratrix with the unpaid debts of her husband's estate, if the same have not been discharged by Stoner; and the accounts show that $196.88 remains unpaid. The article does not bind Stoner to pay the expenses of settling the estate, amounting in this case to $59, which is properly allowed as a credit to Mrs. Ritterspach. We come now to another branch of the case. The auditor received parol evidence to show what part of the consideration in the article emanated from Mrs. Ritterspach, and what from her husband's estate. This evidence was rightly received, as the article is ambiguous on the subject, and yet on its face shows that some part came from her. On looking into the testimony, it appears that besides the goods, the lease and the lot belonging to the husband, Mrs. Ritterspach agreed to give her own services, her own accounts, and her right to take $300 worth of her husband's goods. In consideration of which Mr. Stoner agreed that she should keep certain enumerated articles; that he would pay all the debts of the decedent's estate, and pay her $500. From this it is very clear that Mrs. Ritterspach sold her right to the $300 worth of goods granted by law under certain circumstances for the use of herself and family. This sale took place before she had any more than a mere inchoate right. Her interest in the goods, as recognized by law, commences with the appraisement, submitted to, and approved by the court, and when she is not the administratrix, delivery over to her by the administrator.

[In the Matter of Eargood's Estate.]

The widow must first select the goods, which she desires to retain, and they are to be appraised as stated. Without this she has no right. It is not in the power of the widow or heirs to sell their right to elect; and should they do so, the purchaser would acquire no interest. It is not an assignable or transferable commodity, but a kind of charity left by the law in the hands of a widow, not for her own use only, but as a trustee for herself and family; and the object is to prevent a household from being stripped, on the death of the head, of those necessary articles in daily use, and required for the comfort and subsistence of all persons living in a civilized state. In this case no selection and appraisement was made, but the whole stock was sold. From what we have already said, it is clear that the widow had nothing to sell, yet she received $300 for an interest in her husband's goods, which she only held as administratrix, and not as widow; consequently her estate must be charged with that sum.

Therefore, it is ordered that Mrs. Ritterspach be charged with the sum of three hundred dollars received for her husband's goods, and his estate credited with a like amount; and the account of Charles Ritterspach's estate, after receiving the credit of $300, can suffer no deduction for debts except the expenses incident to the settlement thereof. If this disposition of the accounts falls heavily on the estate of Mrs. Ritterspach, it is attributable solely to her own illegal proceeding from first to last, in regard to her husband's estate.

The two accounts are referred back to Mr. Etter to be stated on the principles indicated.